**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: September 28, 2023**



*Rachel Blise*

**Hon. Rachel M. Blise**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | |
| Robert J. Masewicz, | Case No. 21-12553-rmb |
| | Chapter 7 |
| Debtor. | |

| | |
|---|---|
| Mark J. Wittman, Chapter 7 Trustee, | |
| Plaintiff, | Adversary No. 23-00009-rmb |
| v. | |
| Jennifer E. Masewicz and Robert J. Masewicz, | |
| Defendants. | |

### DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The chapter 7 trustee for the estate of Robert J. Masewicz filed a three-count complaint against Jennifer E. Masewicz ("Jennifer") and Robert J. Masewicz ("Robert") to avoid and recover Robert's allegedly fraudulent prepetition transfer of real property to Jennifer under 11 U.S.C. § 544(b) and Wis. Stat. §§ 242.04(1)(a), 242.04(1)(b), and 242.05(1).

Both defendants filed motions to dismiss the trustee's adversary complaint under Rule 12(b)(6). Jennifer argues the trustee's claims are barred by the statute of limitations and the

complaint does not meet the pleading requirements of Federal Rules of Civil Procedure 8 and 9.

Robert argues the trustee does not state any actionable claims against Robert as transferor of the

property and that the complaint does not meet the pleading requirements of Rule 9.  After the

parties briefed the issues, the Court heard oral argument and took the matter under advisement.

The Court has jurisdiction over the motions to dismiss pursuant to 28 U.S.C. § 1334 and

the order of reference from the district court pursuant to 28 U.S.C. § 157(a).  *See* General Order

No. 161 (W.D. Wis. June 12, 1984) (available at https://www.wiwd.uscourts.gov/administrative-

orders) (last visited September 26, 2023).  As a proceeding to determine, avoid, or recover a

fraudulent conveyance, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).  This

Court is permitted to enter a final order, *see* 28 U.S.C. § 157(b)(1), and neither the complaint nor

the motions to dismiss include a statement that the parties do not consent to entry of final

judgment.  *See* Fed. R. Bankr. P. 7008, 7012(b); *see also Wellness Int'l Network, Ltd. v. Sharif*,

575 U.S. 665, 683 (2015) ("Nothing in the Constitution requires that consent to adjudication by a

bankruptcy court be express.").  For the reasons explained below, the Court grants the motions to

dismiss.

## FACTS ALLEGED IN COMPLAINT

For the purposes of the pending motions to dismiss, the Court accepts as true the

following facts taken from the trustee's complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)[.]") (internal citations omitted).

Robert and Jennifer are married, and both have resided – and continue to reside – at the

residence located at W5750 Sherwood Drive, La Crosse, Wisconsin (the "Property") since 2006.

Compl. ¶¶ 13, 14, 18.  On December 18, 2017, Robert and Jennifer, as husband and wife,

executed a quit claim deed pursuant to which Robert and Jennifer quit claimed the Property to

Jennifer only. *Id*. ¶ 15. The quit claim deed was recorded in the Office of the LaCrosse County

Register of Deeds on December 21, 2017. *Id*. The trustee alleges that the Property currently has

a tax assessed value of $584,400.00 and an estimated fair market value of $860,200.00. *Id*. ¶ 19.

The Property is encumbered by mortgages in the original amounts of $160,000.00 and

$510,000.00, both of which were granted in November 2020. *Id*. ¶ 20.

Robert did not receive any consideration from Jennifer for the transfer, and he was not

indebted or otherwise obligated to Jennifer at the time of the transfer. *Id*. ¶¶ 16, 24, 35(e).

On August 17, 2020, the Internal Revenue Service assessed unpaid income taxes against

Robert in the amount of $21,604.86 for the 2019 tax year. *Id*. ¶ 26. The trustee also alleges that,

"at all times prior to the Petition Date and prior to the transfer of the [Property]," there were

other "actual creditors of Robert in existence, which creditors held, and still hold, unsecured

claims allowable under 11 U.S.C. § 502." *Id*. ¶ 25.

The trustee alleges that Robert transferred the Property with the actual intent to hinder,

delay, or defraud his creditors. *Id*. ¶ 35. He also alleges that Robert was insolvent at the time of

the transfer or was rendered insolvent by the transfer. *Id*. ¶¶ 39, 43.

Robert filed a voluntary chapter 7 petition on December 23, 2021, and stated on Schedule

A/B that he had no ownership interest in any real estate or household goods and furnishings. *Id*.

¶¶ 8, 10.

## DISCUSSION

Robert moves to dismiss on the grounds that he is not a proper party defendant and that

the trustee's claims are not sufficiently pleaded under Rule 9(b). Jennifer seeks dismissal on the

grounds that the claims against her are barred by the statute of limitations. Jennifer also argues

that, if the trustee's claims are not barred, they are insufficiently pleaded. For the reasons set

forth below, the Court concludes that Robert is a proper defendant at this stage and that the

trustee's claims are not barred by the statute of limitations, but that the trustee has not satisfied

the requisite pleading standards.  The Court will dismiss all three claims and will grant the

trustee leave to amend the complaint.

**1.       Robert Masewicz Is a Proper Party Defendant.**

Robert asserts that he should be dismissed from the adversary proceeding because the

complaint does not identify what possible relief the trustee can seek from him since he cannot

"un-transfer" the property.  ECF No. 20 at 3-4.  The Court concludes that Robert is an

appropriate defendant, and therefore denies his motion to dismiss on this basis.

Robert cites no authority for this argument in his motion, and the trustee does not address

it in his response.  At oral argument, counsel for Robert noted that in a typical fraudulent transfer

action, the prevailing party would recover from the transferee, not the transferor.  In this case,

counsel argued, because there would be nothing for the trustee to recover from Robert he should

not be joined as a party.  Counsel for the trustee countered that transferors can be joined in

fraudulent transfer actions and emphasized that the issue was complicated in this proceeding

because Robert and Jennifer are legally separated but both live in the Property.

The trustee brings his claims under 11 U.S.C. § 544(b), which allows the trustee to avoid

certain pre-petition transfers made by the debtor.  If the trustee's claims are successful, his

avenue to relief is in 11 U.S.C. § 550(a).  That section provides that "the trustee may recover, for

the benefit of the estate, the property transferred, or, if the court so orders, the value of such

property from . . . the initial transferee of such transfer or the entity for whose benefit such

transfer was made."  11 U.S.C. § 550(a)(1).

According to one treatise, "[b]oth the transferor and the transferee are deemed to be

necessary parties to a fraudulent transfer suit."  Collier on Bankruptcy ¶ 548.10[2] n.3 (16th ed.

2023) (citing Fed. R. Bankr. P. 7019).  There are instances where courts have determined that the transferor is not a *necessary* party.  *See, e.g.*, *In re Tessmer*, 329 B.R. 776, 779 (Bankr. M.D. Ga. 2005) ("the transferor (Debtor) is not an indispensable party to a fraudulent conveyance action").  But it does not necessarily follow that a transferor is not a *proper* party.  *See, e.g., In re Carbone*, 615 B.R. 76, 78 (Bankr. E.D. Pa. 2020) (trustee brought complaint against debtor and non-filing spouse, seeking to avoid and recover debtor's prepetition transfer of home to non-filing spouse).

In determining whether a transferor is a proper party to a fraudulent transfer action, courts have generally focused on whether the transferor retained some benefit from the transfer. *See, e.g.*, *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-jad-vcf, 2015 WL 13677808, at *2 (D. Nev. Jan. 23, 2015) (noting "weight of authority is that a transferor is indispensable only where he has retained an interest in the conveyed property"); *In re Halpert & Co., Inc.*, 254 B.R. 104, 116-18 (Bankr. D. N.J. 1999) (concluding both transferor and transferee of fraudulently transferred assets should be joined as necessary parties for a claim under § 548 because trustee had alleged the transferor retained some benefit from the transfer).

Here, the trustee alleges that Robert retained possession or control of the Property after the transfer.  Furthermore, the relationship between the defendants is complicated because the couple is legally separated but currently living together.  Robert's possessory interest in the Property, combined with the unclear relationship between Robert as transferor and Jennifer as transferee, leads the Court to conclude that, at this stage of the litigation and based solely on the allegations in the complaint, Robert is an appropriate defendant.  The Court will therefore deny Robert's motion to dismiss without prejudice to his ability to bring a motion on the same basis if facts are developed that demonstrate he retained no interest in the Property after the transfer.

2.      **The Trustee's Claims Are Not Barred by Statutes of Limitations.**

Jennifer asserts that the trustee's complaint should be dismissed because the challenged

transfer occurred outside the applicable four- and one-year statutes of limitations under Wis.

Stats. §§ 242.04 and 242.05.  The trustee responds that 11 U.S.C. § 544(b) allows him to take

advantage of the statutes of limitations available to the United States under 26 U.S.C.

§ 6502(a)(1) and under the Federal Debt Collection Procedure Act (FDCPA), 28 U.S.C.

§ 3304(b).  The parties agree that the Court need not reach the question whether the statute of

limitations under the FDCPA can be applied if the Court concludes that the trustee's complaint is

timely under 26 U.S.C. § 6502.  The Court holds that the trustee may use the limitations period

in 26 U.S.C. § 6502 and therefore does not reach the question whether the FDCPA is applicable.

Expiration of the statute of limitations is an affirmative defense, and affirmative defenses

generally are not grounds for dismissal at the motion to dismiss stage.  *United States v. Northern*

*Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) ("A complaint states a claim on which relief may be

granted whether or not some defense is potentially available. This is why complaints need not

anticipate and attempt to plead around defenses.").  A court may dismiss a complaint on that

ground only "when the plaintiff pleads himself out of court by alleging facts sufficient to

establish the complaint's tardiness."  *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559

F.3d 671, 674-75 (7th Cir. 2009).  Here, the allegations in the trustee's complaint include all the

facts necessary to consider Jennifer's affirmative defense.

Section 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the

debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured

claim that is allowable under section 502[.]"  11 U.S.C. § 544(b)(1).  The statute "enables the

trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of

bankruptcy – except the trustee will recover the property for the benefit of the estate."  *In re*

*Equip. Acquisition Resources, Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). "In other words, if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate." *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997). "A trustee stands in the shoes of an actual unsecured creditor and becomes subject to the same rights and limitations that the actual unsecured creditor would be subject to outside of bankruptcy." *In re Kaiser*, 525 B.R. 697, 708 (Bankr. N.D. Ill. 2014). Unlike a creditor acting outside bankruptcy, however, the trustee is not limited to the value of the creditor's claim and can avoid the entire transfer. *Leonard*, 125 F.3d at 544-45 ("Even if he cannot point to creditors whose claims total more than the value of the land, the Trustee can avoid the transaction entirely.").

The parties disagree as to the meaning of the phrase "applicable law" in § 544(b). The trustee argues that he can avoid a transfer under § 544(b) if the transfer is voidable outside bankruptcy by a creditor holding an unsecured claim allowable under § 502 under any law applicable to that creditor, even law applicable only to the United States. Jennifer argues that the applicable law under § 544(b) does not include law applicable only to the United States.

The first step in determining the meaning of the language in § 544(b) is the text of the statute itself. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). Where the language of the statute is unambiguous, that is also the last step. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (explaining the "inquiry must cease if the statutory language is unambiguous . . . ."). So long as "the disposition required by the text is not absurd[,]" the statute must be applied according to its terms. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal citation omitted).

In this case, the trustee wants to step into the shoes of the IRS and use the statute of limitations applicable to the IRS, which filed an unsecured claim in Robert's underlying bankruptcy proceeding.  As relevant here, 26 U.S.C. § 6502 provides that taxes assessed by the IRS "may be collected by levy or by a proceeding in court . . . within 10 years after the assessment of the tax[.]"  26 U.S.C. § 6502(a)(1).  One tool of collection expressly authorized by statute is collection from a transferee of debtor's property.  26 U.S.C. § 6901(a)(1)(A).  While § 6901 authorizes the IRS to pursue fraudulent transfer actions, the IRS must rely on applicable state law to establish a transferee's substantive liability.  *See Mukamal v. Citibank N.A. (In re Kipnis)*, 555 B.R. 877, 881 (Bankr. S.D. Fla. 2016) ("To establish transferee liability the IRS must rely on applicable state law.").

The state law applicable here is Wis. Stat. §§ 242.04(1)(a), (b) and 242.05.  These sections allow existing and future creditors to avoid certain actual and constructively fraudulent transfers.  The statute of limitations for these claims is generally four years.  Wis. Stat. § 893.425.  However, courts have been nearly unanimous in holding that § 6502(a)(1) allows the IRS to pursue a fraudulent transfer claim against a transferor within ten years after the assessment of a tax against the taxpayer, regardless of the limitations period in the applicable state law.  *See, e.g.*, *United States v. Cody*, 961 F. Supp. 220, 221 (S.D. Ind. 1997) (collecting cases).

Jennifer does not dispute that the IRS has a claim against Robert in the total amount of $21,604.86 for taxes assessed on August 17, 2020.  The law is clear that, outside of bankruptcy, the IRS would be well within the statute of limitations if the IRS, rather than the trustee, had filed a complaint on March 15, 2023 seeking to avoid the December 21, 2017 transfer of the Property under Wis. Stat. §§ 242.04(1)(a), (b) and 242.05.

The question is whether the trustee can stand in the shoes of IRS and rely on the limitations period from § 6502(a)(1) for his claims under § 544(b) and Wis. Stat. §§ 242.04(1)(a), (b) and 242.05.  The Seventh Circuit has not addressed the issue, but the vast majority of courts that have ruled on the issue have concluded that § 544(b) allows a trustee to take advantage of the ten-year limitations period in § 6502(a)(1) if the IRS is the underlying creditor for the trustee's avoidance claim.  *See In re Palmieri*, 651 B.R. 349, 355-56 (Bankr. N.D. Ill. 2023) (collecting cases); *see also Williamson v. Smith (In re Smith)*, Case No. 22-07002, 2022 WL 1814415, *6 (Bankr. D. Kan. June 2, 2022); *Kipnis*, 555 B.R. at 883; *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 711-12 (Bankr. N.D. Ill. 2014).

Here, the IRS holds an unsecured claim that is allowable under 11 U.S.C. § 502.  And the applicable law under which Robert's transfer of the Property may be voidable by the IRS is Wis. Stat. §§ 242.04(1) and 242.05 and 26 U.S.C. § 6502(a)(1).  Nothing in § 544(b) suggests that the trustee may not use the IRS as the unsecured creditor into whose shoes he can step to avoid a transfer or that the law applicable to the IRS is not applicable to the trustee's claim under § 544(b).  "The grant of derivative rights to a trustee is unqualified."  *See Smith*, 2022 WL 1814415 at *6.

Jennifer urges the Court to adopt the minority position set forth in *Wagner v. Ultima Homes, Inc. (In re Vaughan Co. Realtors)*, 498 B.R. 297 (Bankr. D.N.M. 2013).  In that case, the trustee sought to avoid under § 544(b) a transfer made by a bankrupt company more than four years before the petition date because, the trustee alleged, the transfer would be avoidable by the IRS, which had filed an unsecured claim in the bankruptcy.  *Id.* at 301.  The bankruptcy court acknowledged that the transfer would be avoidable by the IRS outside bankruptcy using the extended reach-back period in § 6502, but the court concluded that a bankruptcy trustee standing

in the shoes of the IRS is not immunized from state statutes of limitation. *Id.* at 304. The court

relied on a doctrine known as *nullum tempus occurrit regi*, or "no time runs against the king."

*Id.* It reasoned that "[i]mmunity from state statutes of limitation is a sovereign power of the

United States" and therefore the longer statute of limitations in § 6502 applies only when the

United States pursues public rights or interests. *Id.* The court concluded that Congress did not

"intend[] to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the

strictures of state law in the pursuit of her private interests." *Id.* The IRS, the court said, would

be similarly limited if it were pursuing avoidance of a transfer for a private purpose and not for

collection of taxes for the public benefit. *Id.* at 305. The court was also concerned with the

substantial number of bankruptcy cases in which the IRS holds an unsecured claim, noting that it

would "eviscerate" the four-year reach-back period under state law in most bankruptcy cases. *Id.*

The Court is not persuaded and joins the majority. The text of § 544(b) plainly allows the

trustee to step into the shoes of any unsecured creditor, without limitation. Once the trustee steps

into the shoes of that creditor, he obtains both the benefits and burdens of any claim that creditor

may pursue outside bankruptcy. In some cases, this will mean that a trustee is precluded from

recovering because the underlying creditor cannot recover. *See, e.g.*, *In re Equip. Acquisition*

*Resources*, 742 F.3d at 747 (trustee could not avoid transfer to federal government under

§ 544(b) where an unsecured creditor could not avoid the transfer outside bankruptcy). In other

cases, such as this one, the trustee's choice of underlying creditor may widen the applicable law

and possibility of recovery.

Jennifer's interpretation of § 544(b) would require the Court to imply an exception that is

not in the text of the statute. That is, the Court would need to construe the phrase "applicable

law" in § 544(b) to mean applicable law except law applicable only to the United States when it

acts as a creditor.  Such an implied exception is not warranted here.  The Supreme Court has

instructed that "[e]xceptions to clearly delineated statutes will be implied only where essential to

prevent 'absurd results' or consequences obviously at variance with the policy of the enactment

as a whole."  *United States v. Rutherford*, 442 U.S. 544, 552 (1979).

It is true that the IRS is an unsecured creditor in many cases.  For this reason, some courts

have referred to the IRS as the "golden creditor" because the presence of a claim by this creditor

could dramatically extend the reach-back period for a trustee to avoid a fraudulent transfer.  *See,

e.g.*, *Kaiser*, 525 B.R. at 704.  It is not absurd to think that Congress would intend trustees to

have that power.  Subject to certain exceptions, taxes for which a return was due more than three

years before the petition date can be discharged in a chapter 7 bankruptcy.  *See* 11 U.S.C.

§§ 507(a)(8), 523(a)(7), 727(b).  The IRS may not have fixed a lien or engaged in a full

investigation of the debtor's financial affairs before the debtor files bankruptcy.  The IRS would

therefore benefit if the trustee is able to pursue a fraudulent transfer claim because the IRS will

be able to share in any proceeds of such a claim.  If the trustee could not pursue those claims,

then that avenue for recovery would be lost to the IRS once the discharge is entered.

At bottom, the *Vaughn* court's reasoning is based on policy, not on the text of the statute.

"This court is, however, not a court of policy.  When the law is clear, the court need not look to

the underlying policy."  *In re Kaiser*, 525 B.R. at 713.  The text of § 544(b) is clear that the

trustee may avoid a transfer that is voidable by an unsecured creditor under the law applicable to

that creditor.  The Court will therefore deny the motion to dismiss because the trustee's

complaint is not barred by the statute of limitations.

**3.      The Trustee's Allegations Are Insufficient Under Rules 8 and 9.**

Robert and Jennifer argue that the trustee's complaint fails to meet the heightened

pleading standard for fraud claims under Federal Rule of Civil Procedure 9, made applicable to

this proceeding by Federal Rule of Bankruptcy Procedure 7009.  Although a fraudulent transfer

is not the same as actual fraud, the particularity requirement of Rule 9(b) applies to fraudulent

transfer claims.  *General Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1079 (7th Cir.

1997).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of

a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This requirement may be met

by providing the "'who, what, when, and where' of the alleged fraud."  *Uni*Quality, Inc. v.

Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992).

Jennifer also argues that the trustee's complaint does not meet the more relaxed pleading

standard under Rule 8, made applicable to this proceeding by Federal Rule of Bankruptcy

Procedure 7008.  To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Factual allegations in a complaint must "raise a right to relief above the speculative

level," meaning that they are more than "merely consistent with" the defendant's liability.

*Twombly*, 550 U.S. at 555-57.  Exactly how specific a complaint must be varies with the

complexity of a plaintiff's claim, but "the plaintiff must give enough details about the subject-

matter of the case to present a story that holds together."  *McCauley v. City of Chicago*, 671 F.3d

616-17 (7th Cir. 2011).  Where "the allegations give rise to an 'obvious alternative explanation,'

the complaint may 'stop[] short of the line between possibility and plausibility[.]'"  *Id*. at 616

(quoting *Twombly*, 550 U.S. at 557, 567).

Upon review of the trustee's allegations, the Court concludes that the complaint does not include sufficient allegations to support the claims. The Court will therefore grant the defendants' motions to dismiss, but will grant the trustee leave to replead the claims.

> **a. The Trustee Did Not Sufficiently Plead Claim 1: Intentionally Fraudulent Transfer, 11 U.S.C. § 544(b) and Wis. Stat. § 242.04(1)(a).**

The defendants argue that Claim 1 of the complaint should be dismissed because the trustee's allegations of "badges of fraud" are threadbare and therefore are not sufficient. The complaint alleges that Robert's transfer of the Property was fraudulent under Wis. Stat. § 242.04(1)(a). That statute provides:

> A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (a) With actual intent to hinder, delay or defraud any creditor of the debtor.

Wis. Stat. § 242.04(1)(a). For the trustee to successfully plead a cause of action under the statute, the complaint must provide adequate facts to support each of the following elements: (1) the debtor made a voluntary transfer; (2) a creditor's claim arose before or after the transfer; and (3) the debtor made the transfer with actual intent to defraud any creditor of the debtor. *See* Wis. Stat. § 242.04(1)(a).

The trustee alleges that Robert made a voluntary transfer of the Property, and he provides the date and details regarding the instrument whereby the Property was transferred. Compl. ¶ 15. The trustee also alleges that there exists a creditor whose claim arose before or after the transfer. He points specifically to the IRS, whose claim arose on August 17, 2020. *Id.* ¶ 26.

Finally, the trustee alleges that Robert made the transfer with actual intent to defraud his creditors. *Id.* ¶ 35. The defendants argue that the trustee did not sufficiently plead the last

element because he did not include sufficient facts from which Robert's intent to defraud could be inferred. The Court agrees.

Rule 9(b) provides that intent and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). "But 'generally' is a relative term. . . . Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid – though still operative – strictures of Rule 8." *Iqbal*, 556 U.S. at 686.

Actual intent to defraud creditors is often proved by circumstantial evidence, referred to as "badges of fraud." *See In re Pansier*, 613 B.R. 119, 148 (Bankr. E.D. Wis. 2020). These badges of fraud are listed in Wis. Stat. § 242.04:

> (2) In determining actual intent under sub. (1)(a), consideration may be given, among other factors, to whether:
>> (a) The transfer or obligation was to an insider;
>> (b) The debtor retained possession or control of the property transferred after the transfer;
>> (c) The transfer or the obligation was disclosed or concealed;
>> (d) Before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
>> (e) The transfer was of substantially all the debtor's assets;
>> (f) The debtor absconded;
>> (g) The debtor removed or concealed assets;
>> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Wis. Stat. § 242.04(2). A creditor bringing a claim under Wis. Stat. § 242.04(1)(a) need not plead or prove every badge of fraud to successfully prove a claim. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 599-600 (7th Cir. 2005) (to prove a fraudulent

conveyance, it is not necessary to demonstrate existence of all 11 badges of fraud listed in the

Uniform Fraudulent Transfer Act).  However, even under Rule 8, there must be sufficient facts

alleged in the complaint supporting the conclusion that the debtor acted with actual intent to

defraud.  *Iqbal*, 556 U.S. at 686 ("Rule 8 does not empower [a plaintiff] to plead the bare

elements of his cause of action, affix the label 'general allegation,' and expect his complaint to

survive a motion to dismiss.").

The trustee alleges facts supporting only the first two factors in Wis. Stat. § 242.04(2).

The transfer was to an insider (his wife) and Robert retained possession or control of the

Property after the transfer.  Compl. ¶¶ 13, 18.  Standing alone, these facts do not suggest an

attempt to evade creditors.

The remaining factors are alleged conclusively, and without any facts that would support

the conclusion.  In particular, the trustee does not plead sufficient facts supporting his allegations

that Robert did not receive reasonably equivalent value for the transfer or that Robert was

insolvent or became insolvent shortly after the transfer.  *See* Compl. ¶¶ 35(e), (f).  These are

elements of the trustee's Claim 2 under Wis. Stat. § 242.04(1)(b).  For the reasons discussed

below, the Court concludes that the allegations regarding those facts are insufficient.

The trustee was required to allege more facts supporting his conclusory allegation that

Robert "transferred the [Property] with actual intent to hinder, delay, or defraud his creditors."

*See* Compl. ¶ 35.  The trustee's boilerplate recitation of the badges of fraud is insufficient.  The

Court will therefore dismiss Claim 1 but will grant the trustee leave to amend.

**b.      The Trustee Did Not Sufficiently Plead Claim 2: Constructively Fraudulent Transfer, 11 U.S.C. § 544(b) and Wis. Stat. § 242.04(1)(b).**

The defendants argue that Claim 2 of the complaint should be dismissed because the

trustee does not allege any facts supporting the allegations that Robert did not receive reasonably

equivalent value for the transfer of the Property and that Robert was insolvent at the time of the transfer.

The complaint alleges that Robert's transfer of the Property was constructively fraudulent under Wis. Stat. § 242.04(1)(b).  That statute provides:

> A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> . . .
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> 2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Wis. Stat. § 242.04(1)(b).

For the trustee to successfully plead a cause of action under section 242.04(1)(b), the complaint must provide adequate facts to support each of the following elements:  (1) the debtor made a voluntary transfer; (2) a creditor's claim arose before or after the transfer; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness. Wis. Stat. § 242.04(1)(b).

As noted above, the trustee adequately alleges that Robert made a transfer and that there exists a creditor whose claim arose before or after the transfer.

The trustee's allegations regarding the third element are not sufficient.  "Equivalent value must be measured as of the time of the transfer."  *In re McCook Metals, L.L.C.*, 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005); *In re Jordan*, 392 B.R. 428, 441 (Bankr. D. Idaho 2008) ("The

determination of reasonable equivalence must be made as of the time of the transfer.") (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994)).

The trustee alleges that Robert did not receive any consideration from Jennifer for the Property. Compl. ¶ 16. But he does not allege that the Property was worth anything at the time of the transfer. He alleges that the Property "has a tax assessed value of $584,400.00 and an estimated fair market value of $860,200.00." Compl. ¶ 19. This allegation is phrased in the present tense and therefore speaks to the value of the Property in 2023. The complaint includes no allegations regarding the value of the Property in December 2017 at the time of the transfer. Moreover, the trustee alleges that the Property is encumbered by two mortgages that were granted in November 2020, nearly three years after the transfer. There are no allegations regarding whether the Property was encumbered in December 2017.

The parties spill much ink in their briefs regarding whether a bankruptcy trustee is subject to a more relaxed pleading standard because trustees often lack the information necessary to fully comply with Rule 9(b). *See In re Mack Indus., Ltd.*, 622 B.R. 887, 896 (Bankr. N.D. Ill. 2020) ("The particularity standard is 'somewhat relaxed' for a bankruptcy trustee because he may lack information that the debtor would have."). They also dispute whether the trustee knew or should have known from his pre-suit investigation that there was a fire at the Property in 2017 that affected its value. ECF No. 26; ECF No. 27 at 5; ECF No. 28 at 3-4. None of this evidence is appropriate for the Court to consider at the motion to dismiss stage. The Court concludes that the trustee's pleading can be analyzed under the ordinary Rule 8 and Rule 9(b) standards, without resort to any "relaxed" standard that may be available to the trustee.

The property at issue in this case is a parcel of real property. It is not the sort of asset that could not be subject to a reasonable pre-suit investigation by the trustee to determine an estimate

of its value at the time of the transfer.  Without allegations regarding the value or estimated value of the Property at the time of the transfer, the trustee's allegation that Robert did not receive reasonably equivalent value is not sufficient under Rule 9(b).

Jennifer also argues that the trustee did not sufficiently plead the final element regarding insolvency.  The Court agrees.  "A complaint alleging a constructive fraud claim must plead facts from which an inference of insolvency can be drawn."  *In re VitaHEAT Med., LLC*, 629 B.R. 250, 260 (Bankr. N.D. Ill. 2021) (internal quotation omitted); *see also In re Island View Crossing II, L.P.*, 604 B.R. 181, 199-200 (Bankr. E.D. Pa. 2019) ("The Trustee merely states the boilerplate conclusion that the Transfers were made when the Debtor was insolvent or rendered the Debtor insolvent.  This is insufficient."); *In re Gluth Bros. Const.*, Inc., 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (allegation of insolvency insufficient because "the complaint merely gives a formulaic recitation of the element").

The trustee's complaint includes only a "formulaic recitation" of insolvency: "Robert was engaged in or was about to engage in a business for which its remaining assets were unreasonably small in relation to its business, and Robert reasonably should have believed he would incur debts beyond his ability to pay the debts as they became due."  Compl. ¶ 39.  This is not enough.  The trustee was required to allege some facts regarding the alleged business transactions for which Robert no longer had sufficient assets or the reason why Robert should have believed he would incur debts that the transfer would leave him unable to pay.

The Court will therefore dismiss Claim 2 but will grant the trustee leave to amend.

**c.    The Trustee Did Not Sufficiently Plead Claim 3: Constructively Fraudulent Transfer, 11 U.S.C. § 544(b) and Wis. Stat. § 242.05(1).**

The trustee also seeks to avoid the transfer under Wis. Stat. § 242.05(1), which provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor *whose claim arose before the transfer was made* or the obligation was

incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Wis. Stat. § 242.05(1) (emphasis added).  "Read together, these two statutes [§ 544(b) and Wis. Stat. § 242.05(1)] permit a trustee to avoid a pre-petition transfer of property if . . . the debtor had an unsecured creditor at the time of the transfer who was still an unsecured creditor at the time of the bankruptcy filing[.]"  *In re Kirchner*, 372 B.R. 459, 462 (Bankr. W.D. Wis. 2007).

The trustee alleges that "[t]here are creditors of Robert whose claims arose prior to transfer" of the real property.  Compl. ¶ 43.  The only creditor identified in the complaint is the IRS.  The IRS's claim arose on August 17, 2020, well after the December 21, 2017 transfer of the Property.  The IRS would have no claim under Wis. Stat. § 242.05(1), so the trustee cannot stand in the shoes of the IRS to avoid the transfer under that statute.

The existence and identity of a triggering creditor is something that must be alleged specifically under Rule 9(b), so Claim 3 must be dismissed for failure to comply with the pleading requirements of Rule 9(b).  The Court is skeptical that there exists a creditor with a claim allowable under § 502 whose claim to avoid the transfer has not expired, but the Court will grant the trustee leave to amend.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED:

1.      The defendants' motions to dismiss are GRANTED.

2.      The trustee is granted leave through and including **October 19, 2023** to file an amended complaint.

# # #